# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF VIRGINIA
# ALEXANDRIA DIVISION

| | |
|---|---|
| FEDERAL TRADE COMMISSION and<br><br>OFFICE OF THE MARYLAND ATTORNEY GENERAL, CONSUMER PROTECTION DIVISION,<br><br>    Plaintiffs,<br><br>        v.<br><br>LINDSAY CHEVROLET, L.L.C., *et al.*,<br><br>    Defendants. | Case No. 1:24-cv-02362 (MSN/WEF) |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO ENFORCE ORDER AND SANCTION DEFENDANTS**

Plaintiffs Federal Trade Commission ("FTC") and the Office of the Maryland Attorney General, Consumer Protection Division (the "CPD") (collectively, "Plaintiffs") respectfully request that the Court enforce its Order dated May 9, 2025 against Defendants (Dkt. No. 59) ("May 9 Order") and sanction them for their violation of the Order, pursuant to Federal Rule of Civil Procedure 37(b).

## INTRODUCTION

Defendants have brazenly ignored this Court's May 9 Order to produce the base prices of the cars they sold consumers — a simple and critical piece of information for proving Plaintiffs' allegations that Defendants' advertised prices were deceptive.

On May 9, the Court ordered Defendants to produce "the vehicle base price for all transactions within the relevant time period" by June 9 (Dkt. No. 59), and "to go through the documents, come up with the numbers, give Plaintiffs the numbers." (Ex. 7, Tr. 23:5-6). The Court further made clear to Defendants that "if the only way that you really can do that is to go to the hard-copy documents and go to some warehouse and get them, . . . then somebody's going to have to do that." (Ex. 7, Tr. 21:19-24).

Defendants have failed to comply — forcing Plaintiffs, and now this Court, to waste valuable time during the final weeks of fact discovery, which closes on July 11. Instead of producing accurate base prices, on June 9, Defendants produced a "formula" that put the burden on Plaintiffs to calculate the base price — despite this Court's specific admonition that "I don't think it's appropriate to put the burden on the plaintiff to do the math." (Ex .7, Tr. 21:11-12). When Plaintiffs flagged this noncompliance, Defendants then produced error-filled, calculated base prices — which frequently fail to match the accurate documents the Court ordered Defendants to examine, and which often incorrectly lower the base price by hundreds or

thousands of dollars.  (Decl. ¶¶ 15-20, Ex. 9).  And Defendants have failed to offer any explanation for these errors, including during a meet and confer between the parties on the date of this Motion.  (Decl. ¶ 21).

Defendants' failure to comply with the Order has prejudiced Plaintiffs significantly.  Defendants not only wasted the 30-day period ordered by the Court, but also the prior months of discovery that led to the Court's Order compelling production.  They have also hampered Plaintiffs' ability to develop facts and arguments relevant to Defendants' liability and monetary harm, and also to prepare for depositions.  Plaintiffs therefore respectfully request that the Court enforce its Order to compel Defendants to produce the base prices as found in the Buyer's Orders, and further, as a sanction, that it grant Plaintiffs alone a 30-day extension of fact discovery.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 37(b), "[i]f a party. . . fails to obey an order to provide or permit discovery, . . . the court where the action is pending may issue further just orders," including by "directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims," and by "staying further proceedings until the order is obeyed."

Further, "'[c]ourts have broad discretion to manage discovery, including the authority to impose sanctions for discovery abuses as part of their case management responsibilities.  *Russell v. Absolute Collection Servs., Inc.*, 763 F.3d 385, 396 (4th Cir. 2014) (citing *Saudi v. Northrop Grumman Corp.*, 427 F.3d 271, 278-79 (4th Cir. 2005))."  *Smith v. Devine*, 126 F.4th 331, 342 (4th Cir. 2025).  Additionally, "[d]istrict courts have a range of sanctions from which to choose."

*Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 111, 130 S. Ct. 599, 608, 175 L. Ed. 2d 458 (2009).

## BACKGROUND

On February 27, 2025, Plaintiffs served Defendants with a First Set of Requests for Production of Documents (Decl. ¶ 3; Ex. 1), which included the "[p]rice history" for all cars sold during the relevant time period. Plaintiffs promptly met and conferred with Defendants to underscore the centrality of producing the base price and followed up with numerous emails and letters underscoring this issue. (Decl. ¶¶ 4-8; Ex. 2, 4, 5). Defendants claimed they were not aware of any way to pull the base price for each transaction — despite clear indications that they did know how do it. In response, on May 2, 2025, Plaintiffs filed a Motion to Compel production of the base prices. (Dkt. Nos. 49 & 50).

On May 9, 2025, the Court granted Plaintiffs' Motion on this issue — ordering Defendants to "provide Plaintiffs with the vehicle base price for all transactions within the relevant time period" by June 9. (Dkt. No. 59). During the hearing, when Plaintiffs flagged discrepancies and missing data fields in Defendants' data, the Court held that "if the only way that [Defendants] really can [obtain the base price] is to go to the hard-copy documents and go to some warehouse and get them, . . . then somebody's going to have to do that." (Ex. 7, Tr. 21:19-24). The Court further stated that, "[w]e are perfectly comfortable working with hard-copy documents here. The situation that I can't let happen is we roll another six weeks or seven weeks . . . and we still have this level of uncertainty as to what the numbers show." (Ex. 7, Tr. 22:23-23:3); (*see also id.* Tr. 23:3-6) ("It makes a lot more sense for me now, while we still have two months in discovery, to put the burden on [Defendants] to go through the documents, come up with the numbers, give them the numbers…"). Finally, the Court stated that "I don't think it's

appropriate to put the burden on the plaintiff to do the math" using Defendants' data. (Ex. 7, Tr. 21:11-12). And in their Opposition to Plaintiffs' Motion to Compel, and during the hearing, Defendants admitted that the base price can be pulled electronically. (See Dkt. No. 55, n.3 ("some of the specific information [Plaintiffs] seek to compel can be obtained for individual transactions – such as in packets of hard-copy deal documents and in databases that can be individually queried – but not in bulk."); Ex. 7, Tr. 10:20-21 ("They are also in different databases that can only be individually queried . . . .")).

Despite the Court's clear Order, on the June 9 deadline Defendants did not produce base prices. Instead, they produced supplemental transaction data and a "formula" they directed Plaintiffs to use to calculate the base prices (Decl. ¶ 14; Ex. 8) — ignoring the Court's clear instruction against "put[ting] the burden on the plaintiff to do the math." (Ex. 7, Tr. 21:11-12). On June 10, Plaintiffs flagged that this production failed to comply with the Court's Order and requested the court-ordered base prices themselves. (Decl. ¶ 15; Ex. 9). Instead of then producing base prices taken directly from the Buyer's Orders in consumers' paperwork, Defendants produced transaction data with Defendants' calculated base prices — and cryptically added that these calculations were "created for purposes of litigation, and Defendants reserve all rights." (Decl. ¶ 16; Ex. 9).

Plaintiffs spot-checked Defendants' calculated base prices against some of the Buyer's Orders produced by Defendants, and identified that a significant percentage did not match, and in fact often incorrectly lowered the base prices by hundreds or thousands of dollars for each transaction. Plaintiffs flagged this for Defendants and requested an explanation for these discrepancies. (Decl. ¶¶ 17-18; Ex. 9). Instead of providing any explanation, Defendants

minimized the scope of the discrepancies — and their need to address them — as being limited to the examples Plaintiffs quickly found.  (Decl. ¶¶ 19, 21; Ex. 9).

Finally, the Parties met and conferred on June 13, and Defendants again failed to offer any explanation for the discrepancies between their calculated base prices and those accurately listed in their Buyer's Orders.  (Decl. ¶ 21).  Instead, they merely suggested that Plaintiffs depose Defendants' employees about these discrepancies in depositions, and they offered to stipulate only to the accuracy of the base prices listed in the tiny percentage of Buyer's Orders produced to Plaintiffs.  This is insufficient.

### DEFENDANTS VIOLATED THE COURT'S ORDER AND SHOULD BOTH COMPLY AND BE SANCTIONED FOR THIS VIOLATION

**I.    Defendants have failed to produce the base prices found in their transaction documents — as ordered by the Court.**

Defendants' failure to comply with the Court's Order is clear:  On May 9, the Court instructed that, if Defendants had any doubts about the accuracy of their data, "while we still have two months in discovery, . . . to *go through the documents, come up with the numbers, give [Plaintiffs] the numbers…*" (Ex. 7, Tr. 23:4-6) (emphasis added).  The Court responded to Defendants' claims of burden by ordering that, if Defendants had to go to "some warehouse and get [the paperwork], and if somebody looks through the boxes . . . then somebody's going to have to do that." (Ex. 7, Tr. 21:19-24).

Yet, after wasting the 30 days provided by the Court, Defendants produced a "formula," followed by error-filled calculations, and refused to "go through the documents" and "come up with the numbers." (Ex. 7, Tr. 23:5-6).  Instead, they have repeatedly put the burden on Plaintiffs to dig through the limited set of Defendants' own Buyer's Orders that they have and run calculations.  This is a bald violation of the Court's Order, and Plaintiffs respectfully request that

Defendants be required to provide the base prices found in their Buyer's Orders documents for each transaction.[1]

## II. Defendants should be sanctioned for their Order violation.

Defendants have delayed the process of producing base prices not only throughout the 30-day period required in the May 9 Order, but also during the intervening days since June 9. This has prejudiced Plaintiffs' ability to develop facts and arguments crucial to proving liability and monetary harm. This conduct has also prejudiced Plaintiffs' ability to prepare for depositions — for example, to identify and ask Defendants about transactions in which consumers paid more than the advertised price for their cars.

Defendants should not be permitted to benefit from the critical time they have wasted during the final two months of discovery. This Court's "broad discretion to manage discovery, including the authority to impose sanctions," gives it the authority to allow Plaintiffs to recover the valuable time in discovery that Defendants' failure has cost them, and the ability to use this information in upcoming depositions. *Russell*, 763 F.3d at 396. Therefore, Plaintiffs respectively request that the Court grant Plaintiffs alone an additional 30 days to request and receive discovery from Defendants.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court order Defendants to comply with the May 9, 2025 Order and extend the discovery period for Plaintiffs alone by 30 days.

---

[1] To the extent that these Buyer's Orders show that some consumers qualified for rebates not reflected in their base price, Plaintiffs agree with Defendants that the price reduction from these rebates should be subtracted from the base price produced. However, Plaintiffs believe Defendants should be required to identify which transactions included rebates and the rebate amount that applied to each.

| | |
|---|---|
| Dated: June 13, 2025 | */s/ Sarah T. Abutaleb*<br>SARAH T. ABUTALEB<br>EVAN ZULLOW<br>JAMIE D. BROOKS<br>JASON SANDERS<br>ADAM SALTZMAN<br>WENDY MILLER<br>Federal Trade Commission<br>600 Pennsylvania Avenue NW<br>Mail Stop CC-10232<br>Washington, D.C. 20580<br>Phone: 202-326-2914 (Zullow)<br>Phone: 202-326-2583 (Abutaleb)<br>Phone: 202-326-3764 (Brooks)<br>Phone: 202-326-2357 (Sanders)<br>Phone: 202-538-1038 (Saltzman)<br>Phone: 202- 326-3571 (Miller)<br>E-mail: ezullow@ftc.gov, sabutaleb@ftc.gov, jbrooks4@ftc.gov, jsanders1@ftc.gov, asaltzman1@ftc.gov, wmiller@ftc.gov<br><br>*/s/ Gregory A. Ashe (with permission)*<br>GREGORY A. ASHE (Virginia Bar No. 39131)<br>Local Counsel<br>Federal Trade Commission<br>600 Pennsylvania Avenue NW<br>Mail Stop CC-10232<br>Washington, D.C. 20580<br>Phone: (202) 326-3719<br>E-mail: gashe@ftc.gov<br><br>Attorneys for Plaintiff<br>FEDERAL TRADE COMMISSION<br><br>*/s/ Philip D. Ziperman*<br>PHILIP D. ZIPERMAN (admitted pro hac vice)<br>Deputy Chief<br>Office of the Maryland Attorney General, Consumer Protection Division<br>200 St. Paul Place, 16th Floor<br>Baltimore, MD 21202<br>Phone: 410-576-6417<br>Email: pziperman@oag.state.md.us |

*/s/ Sarah E. Larsen*
SARAH E. LARSEN (admitted *pro hac vice*)
Assistant Attorney General
Office of the Maryland Attorney General,
Consumer Protection Division
200 St. Paul Place, 16th Floor
Baltimore, MD 21202
Phone: 410-576-6595
Email: slarsen@oag.state.md.us

*/s/ Elise Balkin Ice (with permission)*
ELISE BALKIN ICE (Virginia Bar No. 66518)
Local Counsel
Assistant Attorney General, Deputy Counsel
Department of Public Safety and Correctional Services
6776 Reisterstown Road, Suite 313
Baltimore, Maryland 21215
Phone: 443-531-3859
Email: elise.ice1@maryland.gov

Attorneys for Plaintiff
OFFICE OF THE MARYLAND ATTORNEY GENERAL, CONSUMER PROTECTION DIVISION

## CERTIFICATE OF SERVICE

I hereby certify that on June 13, 2025, I caused the foregoing to be filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all counsel of record.

Dated: June 13, 2025

/s/ *Sarah T. Abutaleb*
Sarah T. Abutaleb
Federal Trade Commission
600 Pennsylvania Avenue NW
Mail Stop CC-10232
Washington, D.C. 20580
Phone: 202-326-2583
E-mail: sabutaleb@ftc.gov

Attorney for Plaintiff
FEDERAL TRADE COMMISSION